# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Criminal Action No.: 05-075-01 (RMU) |
| v. : | |
| : | Re Document No.:   181 |
| LEOPOLD GOSS, : | |
| : | |
| Defendant. : | |

**FILED**

AUG 21 2009

Clerk, U.S. District and Bankruptcy Courts

## MEMORANDUM OPINION

### DENYING THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT WITH PREJUDICE DUE TO DELAYS CAUSED BY THE GOVERNMENT AND INEFFECTIVE ASSISTANCE OF COUNSEL

## I. INTRODUCTION

This matter is before the court on the defendant's motion to dismiss the indictment with prejudice due to unnecessary delays caused by the government and repeated instances of ineffective assistance of counsel. The motion, consisting largely of a prolix factual history of the case, lacks a specific legal analysis supporting his claims of a speedy trial violation and ineffective assistance of counsel. Defense counsel provided more specific information to support his position at the motions hearing on August 13, 2009. Upon consideration of the defendant's motion, the government's opposition[1] and the arguments advanced by both parties at the motions hearing, the court denies the defendant's motion for the reasons explained below.

## II. FACTUAL & PROCEDURAL BACKGROUND

On March 3, 2005, the defendant and his former co-defendant, Steven Parker, were indicted on six counts of unlawful distribution of cocaine and cocaine base and possession with

---

[1] The defendant did not file a reply in support of his motion.

1

intent to distribute cocaine base. Specifically, the indictment charged the defendants with the following counts:

| | |
|---|---|
| Counts I-III: | Unlawful Distribution of Cocaine and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; |
| Counts IV-V: | Unlawful Distribution of 5 Grams or More of Cocaine Base and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and 18 U.S.C. § 2; and |
| Count VI: | Unlawful Possession With Intent to Distribute 50 Grams or More of Cocaine Base and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) and 18 U.S.C. § 2. |

*See* Indictment.

On February 8, 2006, the defendants pled guilty before Judge Sullivan to one count of Unlawful Distribution of 5 Grams or More of Cocaine Base and Aiding and Abetting. *See* Minute Entry (Feb. 8, 2006). Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the defendants each agreed to serve 78 months of imprisonment. *See* Plea Agreement (Feb. 6, 2008). On February 23, 2006, the defendant filed a motion to withdraw his guilty plea. *See* Mot. to Withdraw Guilty Plea. The case was reassigned to this court on June 16, 2008; on October 16, 2008, this court granted the defendant's motion to withdraw his guilty plea. *See* Minute Entry (Oct. 16, 2008). Trial is to commence on August 24, 2009.

### III. ANALYSIS

#### A. The Speedy Trial Act Has Not Been Violated

The defendant asserts that the Speedy Trial Act and his constitutional right to a speedy trial have been violated. *See generally* Def.'s Mot. As a preliminary matter, the court notes that the defendant's speedy trial time has not yet elapsed. Because the court granted the defendant's

motion to withdraw his guilty plea on October 16, 2008, pursuant to the Speedy Trial Act the defendant's speedy trial time started over on that date as if it were a new indictment. 18 U.S.C. § 3161(i). On November 13, 2008, the defendant waived, and the court tolled in the interest of justice, the speedy trial time for the period from November 13, 2008 until December 15, 2008. The speedy trial clock resumed on December 15, 2008, and was tolled again automatically when pretrial motions were filed on January 13, 2009. *See id.* § 3161(h)(1)(F) (excluding from the speedy trial time calculation any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"). Because the pretrial motions are still pending, the speedy trial clock remains tolled. The court acknowledged this fact on March 9, 2009, when it directed that the speedy trial clock remain tolled in the interest of justice pending resolution of the motions. *See* Order (Mar. 9, 2009). Thus, fifty-seven days have elapsed out of the defendant's ninety-day speedy trial clock. The speedy trial clock will remain tolled until the resolution of the pretrial motions.[2]

### B. The Defendant's Constitutional Right to a Speedy Trial

The defendant asserts that his constitutional right to a speedy trial has been violated by the delay in bringing this case to trial, which he asserts is the result of the government's inaction and mistakes. *See generally* Def.'s Mot. The government counters that the delay has been the

---

[2] In addition, the period from April 21, 2009 until the day chambers received the mental competency report from FCI Butner – June 17, 2009 – is also excludable. 18 U.S.C. § 3161(h)(1)(A). Because the speedy trial clock has been tolled since the pretrial motions were filed on January 13, 2009 and will remain tolled until the pretrial motions are resolved, excluding these periods would not change the calculation of the speedy trial time, but instead would provide an additional rationale for tolling the speedy trial clock.

result of the defendant's actions.³ *See generally* Govt's Opp'n.

A defendant's Sixth Amendment speedy trial rights are triggered by arrest, indictment or other official accusation. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). The calculus turns not on precisely defined time limitations, but rather on a broad balancing of considerations. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). This balancing, called a *Barker* inquiry, entails a case-by-case consideration of four relevant factors:

> (1) the length of the delay before trial,
> (2) the reason for the delay,
> (3) the vigor with which the defendant has asserted his speedy
> trial rights, and
> (4) the degree of prejudice to the defendant.

*Id.*

### 1. Arguments Advanced at the August 13, 2009 Motions Hearing

At the motions hearing on August 13, 2009, new theories emerged in support of the defendant's motion to dismiss the indictment. The defendant played a recording of a jailhouse telephone call that took place between him and his attorney at the time, Harry Tun, following the defendant's entry of a guilty plea on February 6, 2006. The defendant maintains that this recording and others prove that he was coerced into accepting the guilty plea by Mr. Balarezo, who at the time represented the defendant's co-defendant, Steven Parker. The defendant further

---

³ The defendant has a complicated representation history in this case, summarized as follows: Tony Miles of the Federal Public Defender Service represented the defendant from his arrest on February 4, 2005 until June 21, 2005, when the defendant retained Harry Tun and Daniel Dorsey to represent him. This representation continued until May 5, 2006, when the court granted Mr. Tun's motion to withdraw as counsel. The defendant then retained James Rudasill from May 5, 2006 until February 7, 2007. On February 7, 2007, Mr. Rudasill withdrew and the court appointed Rudolph Acree, a CJA attorney. On November 13, 2007, the court granted Mr. Acree's motion to withdraw, and on December 15, 2008, Mark Carroll entered his appearance on behalf of the defendant.

asserts that Mr. Tun was present when Mr. Balarezo pressured the defendant to accept the guilty plea, proving that Mr. Balarezo acted in collusion with Mr. Tun to coerce the defendant into accepting the guilty plea. Finally, the defendant maintains that because the government heard the recordings of the telephone call between the defendant and Mr. Tun on February 6, 2007, the government was on notice that the defendant's guilty plea had been coerced. The defendant therefore opines that the government violated his constitutional right to a speedy trial by continuing to advance the case toward trial.

The defendant also claims that the government failed to produce all of the recordings of the jailhouse telephone calls that took place between himself and Mr. Tun following the entry of his guilty plea on February 6, 6006. The court will address both of these arguments in the context of its consideration of the *Barker* factors below.

### 2. The *Barker* Factors

The question of whether the defendant's Sixth Amendment rights were violated requires "a highly fact-specific analysis of the [defendant's] own particular case, guided by the balancing test prescribed by the Supreme Court in *Barker*." *United States v. Mills*, 925 F.2d 455, 465 (D.C. Cir. 1991), *vacated on other grounds*, 964 F.2d 1186 (D.C. Cir. 1992). The court addresses each of the four *Barker* factors below.

#### a. Length of Delay

A delay of over six months in bringing a case to trial warrants inquiry and justification, *United States v. Lara*, 520 F.2d 460, 464 (D.C. Cir. 1975), and a one-year delay is generally considered "presumptively prejudicial," *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). The Supreme Court noted in *Doggett* that "as the term is used in this threshold context,

'presumptive prejudice' . . . marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Id.* at 652 n.1. In this case, the defendant has been held for over four and a half years – since February 4, 2005. Therefore, the length of the delay is more than sufficient to trigger the *Barker* analysis.

### b. Reasons for the Delay

"The flag all litigants seek to capture is the second factor [of the *Barker* analysis], the reason for delay." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). The burden is on the government to justify the delay, and the court should take into account the peculiar circumstances of each case. *Barker*, 407 U.S. at 531. For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge," *id.* at 530-31, and a "delay from 'overcrowded courts' . . . would be weighed 'less heavily'" than a "deliberate attempt to delay the trial in order to hamper the defense," *Loud Hawk*, 474 U.S. at 315.

Whenever the government's action at any stage of the proceeding "indicates bad faith, neglect, or a purpose to secure delay itself or some other procedural advantage, the resulting delay is not justified." *United States v. Lara*, 520 F.2d 460, 464 (D.C. Cir. 1975) (citing *United States v. Bishton*, 150 463 F.2d 887, 890 (1972)). If the delay is the result of the government's negligence, the weight to be assigned to the delay should be assessed in relation to any prejudice that the delay has caused to the defendant. *Doggett*, 505 U.S. at 656-57.

The defendant argues that the government is responsible for the delay in bringing his case to trial. Def.'s Mot. at 26-27. He seems to base this assertion on the fact that following his motion to withdraw his guilty plea, he repeatedly requested, through multiple attorneys, that the

government provide the tapes of the telephone conversations between himself and his second attorney, Mr. Tun. *Id.* at 26. The defendant maintains that he has still not received all of the recordings to which he is entitled, *id.*, but the government asserts that it subpoenaed all such recordings, that the defendant himself could have subpoenaed the recordings, Govt's Opp'n at 9, and that any calls it was unable to obtain recordings of were logged not with the defendant's own pin number, but with other inmates' pin numbers, making it difficult or impossible to locate all of the calls placed by the defendant.

The government counters that although the defendant has been held for a lengthy period of time, the delay in bringing this case to trial has been entirely a result of the defendant's own actions and is not due to the government's conduct. *Id.* at 7-10. The defendant submitted, then withdrew, a guilty plea; he changed lawyers multiple times, and each time the new lawyer had to take time to acquaint himself with the case; and he repeatedly requested more time to prepare for hearings and trial. *Id.* The government was prepared to go to trial on February 7, 2006, the day the defendant pled guilty, and to this day, the government remains prepared to try this case. *Id.* at 11.

### c. Defendant's Assertion of His Speedy Trial Rights

It is the defendant's responsibility to assert his speedy trial right. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532. Here, the defendant has offered no information concerning when and how he asserted his speedy trial right, other than by filing the instant motion. *See generally* Def.'s Mot. It bears noting, however, that even if the defendant has asserted his right to a speedy trial, he has also requested, and received, numerous extensions and continuances, cutting against the vigor of

7

his assertion of his right to a speedy trial. *Cf. Loud Hawk*, 474 U.S. at 314-15 (noting that "[a]t the same time respondents were making a record of claims . . . for speedy trial, they consumed six months by filing indisputably frivolous petitions for rehearing and for certiorari . . . [and] repetitive and unsuccessful motions").

### d. Prejudice to the Defendant

In analyzing prejudice, courts are directed to consider the following interests of the defendant: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532.[4] The defendant asserts that he has been prejudiced by the delays in this case because one of his key witnesses is deceased and another is "virtually unavailable due to the passage of time and drug abuse." Def.'s Mot. at 4. The defendant offers no information as to when these witnesses became unavailable. *See generally id.* As for the role that they would have played in his defense, the defendant asserts that the witnesses "could have impeached the government informant by showing his freelancing drug dealing activities." *Id.* at 27.

### 3. The Defendant's Constitutional Right to a Speedy Trial Has Not Been Violated

Although there has been an extremely lengthy – and possibly prejudicial – delay in bringing this case to trial, upon a review of the record in this case, the court concludes that the delay is primarily the result of the defendant (1) impeding the government's effort to provide him with the recordings of the jailhouse calls that he requested and (2) requesting and obtaining new counsel in June 2005, May 2006, February 2007 and December 2008. Further, the defendant

---

[4] A showing of actual prejudice is not required if the delay is the result of the government's negligence and the length of the delay is presumptively prejudicial. In such cases, the burden shifts to the government to rebut the presumption of prejudice. *Doggett*, 505 U.S. at 658.

offers no factual basis for his assertion that the delay has been caused by the government's conduct or negligence. Contrary to the defendant's suggestion, rather than asserting that the defendant was not coerced into accepting a guilty plea, the government consistently recommended that the court conduct an evidentiary hearing to allow the court to rule on the defendant's motion to withdraw his guilty plea. *See* Govt's Opp'n to Def.'s Mot. to Withdraw Guilty Plea (Apr. 28, 2006) at 1 (stating that "[b]ecause the defendant's argument [that he was coerced] rests on factual allegations outside the record, the Court should hold an evidentiary hearing to determine the credibility of the defendant's allegation and to make a determination of the factual issues necessary for a resolution of the defendant's motion").

Further, the court concludes that the government made a sufficient effort to produce the jailhouse calls between the defendant and Mr. Tun. Its failure to produce all of the calls appears to have been the result of the fact that the defendant "abus[ed] the [Correctional Treatment Facility] phone system" by using at least eleven other inmates' pin numbers rather than his own to place calls from the jail. *See generally* Govt's Notice of Def.'s Jail Call Activity (Aug. 14, 2009). Moreover, the defendant himself observes that his third attorney, Mr. Rudasill, "was afforded an opportunity by the government to test and correct any problems he might have had with the disks he received from the government. He never availed himself of this opportunity." Def.'s Mot. at 26. In addition, the defendant contends that his fourth attorney, "Mr. Acree . . . was unfamiliar with the course of action necessary to navigate the Court process in obtaining these taped conversations." *Id.* at 27. Accordingly, even the defendant's own portrayal of the history of this case undercuts his allegation that the delays have been the result of the government's conduct. As a result, the court denies the defendant's motion to dismiss the

indictment due to delays caused by the government.

### C. The Defendant's Claim of Ineffective Assistance of Counsel Lacks Merit

The defendant also makes a vague allegation of ineffective assistance of counsel, repeating his claim that "[Mr.] Balarezo[, former co-defendant Steven Parker's attorney,] threatened Mr. Goss in the cellblock behind Judge Sullivan's courtroom while his attorney Harry Tun passively stood there." *Id.* at 5. As discussed in the preceding section, the defendant also alleges that "Mr. Rudasill . . . was afforded an opportunity by the government to test and correct any problems he might have had with the disks [of recordings of jailhouse calls between the defendant and Mr. Tun that Mr. Rudasill] received from the government. [Mr. Rudasill] never availed himself of this opportunity." *Id.* at 26. In addition, the defendant contends that "Mr. Acree . . . was unfamiliar with the course of action necessary to navigate the Court process in obtaining these taped conversations." *Id.* at 27.

The government opposes the motion, claiming that the efforts of the defendant's previous counsel were not constitutionally deficient. Govt's Opp'n at 12-13. The government points out that Mr. Tun obtained a very favorable plea offer for the defendant, and each subsequent attorney filed numerous motions on the defendant's behalf. *Id.* at 12. In addition, Mr. Acree successfully persuaded the court to allow the defendant to withdraw his guilty plea. *Id.* at 13. Finally, as the government has already argued, the defendant prejudiced himself and slowed the progress of his own case by demanding that his attorneys obtain recordings of his jail calls, urging them to request more time to prepare for hearings, and then requesting a new attorney when he became dissatisfied with counsel's performance. *Id.*

The defendant can succeed on his ineffective assistance of counsel claim only if he shows

that his previous attorneys' efforts fell below an objective standard of reasonableness and were prejudicial to his defense. *Strickland v. Washington*, 466 U.S. 668, 690-92 (1984). Although, as the court concluded at the motions hearing on August 13, 2009, the defendant has made a prima facie showing that Mr. Tun and Mr. Balarezo coordinated in a fashion so as to adversely affect the defendant, the defendant has offered no information that could lead the court to believe that any of his attorneys' conduct fell below an objective standard of reasonableness. Equally damaging to the defendant's ineffective assistance claim is the fact that he has offered no evidence from which the court could conclude that that there is a reasonable probability that, but for his attorneys' allegedly unprofessional errors, the result of his criminal proceeding would be different. *See id.* at 694. He claimed that a crucial defense witness has died, Def.'s Mot. at 4, but provided no death certificate or other evidence to substantiate that assertion; he claimed that another defense witness is "virtually unavailable," *id.*, but similarly offered no evidence to buttress that bare allegation; and he noted during the motions hearing that the radio run from one of the incidents in question is no longer available, but provided no information that would lead the court to conclude that the contents of the radio run would have been outcome-determinative. *See Strickland*, 466 U.S. at 693 (noting that "[i]t is not enough for the defendant to show that the [attorney's alleged errors] had some conceivable effect on the outcome of the proceeding"). As a result, the court rejects the defendant's claim of ineffective assistance of counsel.

## IV. CONCLUSION

For the foregoing reasons, the court denies the defendant's motion to dismiss the indictment with prejudice. An Order consistent with this Memorandum Opinion was issued separately on August 18, 2009.

                                                                RICARDO M. URBINA
                                                                United States District Judge